# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia


ATLAS BARROW

v.      Record No. 0963-21-1

CITY OF NORFOLK DEPARTMENT
 OF HUMAN SERVICES

ATLAS BARROW

v.      Record No. 0964-21-1

CITY OF NORFOLK DEPARTMENT
 OF HUMAN SERVICES                    MEMORANDUM OPINION[*] BY
                                      JUDGE CLIFFORD L. ATHEY, JR.
ATLAS BARROW                          JUNE 21, 2022

v.      Record No. 0966-21-1

CITY OF NORFOLK DEPARTMENT
 OF HUMAN SERVICES

ATLAS BARROW

v.      Record No. 0967-21-1

CITY OF NORFOLK DEPARTMENT
 OF HUMAN SERVICES

        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                Charles J. Maxfield, Judge Designate

        Rodney D. Malouf (Thomas, Adams & Associates, P.C., on brief),
        for appellant.

        Heather L. Kelley, Deputy City Attorney; Katherine D. Currin,
        Guardian *ad litem* for the minor children (Bernard Pishko, City
        Attorney; Morris, Crawford & Currin, P.C., on brief), for appellee.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Atlas Barrow ("father") appeals the circuit court's orders terminating his residual parental rights and approving the foster care goal of adoption for four of his children. Father argues that the circuit court erred by overruling his objection challenging the relevancy of his termination from employment with Perdue. Father also contends that the circuit court erred by terminating his parental rights under Code § 16.1-283(B) and (C)(2) because father made "substantial efforts to remedy the conditions" for which the children were placed into foster care. We find no error and affirm the decisions of the circuit court.

## I. BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Father and Leandra Guagenti ("mother") are the biological parents of four children, ages four through nine.[2] The family's interaction with the City of Norfolk Department of Human Services (the "Department") began in 2013, after the Department investigated a claim that the oldest child had been exposed to the manufacture of methamphetamine.[3] In May 2016, the

---

[1] The records in these cases were sealed. Nevertheless, the appeals necessitate unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father and mother had a fifth child during the pendency of this case who is not involved in these appeals.

[3] Father and mother began dating in 2012, separated before their first child was born in 2013, and reconciled before their second child was born in 2014. Father and mother have remained in a romantic partnership ever since and married during this case.

Department discovered that the motel room in which the family had been residing was in a "deplorable state" and that the children were "unkept," at which point the children were temporarily removed. Later that year, the Department discovered that the children had been left unsupervised in the family's motel room, which suffered from multiple safety hazards and was in a "deplorable condition." Despite the Department discovering the children in the motel room, father initially claimed that the children were staying with his sister. Father subsequently admitted that he left the children in the motel room without adult supervision. He explained the abandonment based upon his work schedule and because he did not have anyone to watch them, as mother was no longer allowed at the motel, having overdosed on heroin in the very same motel room the previous week. Mother, however, claimed that she had left the motel property because she had been "attacked" by father. In response, the Department placed the children in foster care for seven months before ultimately returning them to their parents, who were still living in the same motel room.

On July 15, 2018, the Department received a new report that father and mother were having a violent "domestic dispute." Father explained that mother had driven his car without his permission but denied any domestic violence. At that time, the Department observed that the motel room was "disheveled, with dishes in the kitchen sink and counter tops, scattered clothing, boxes, and miscellaneous items occupying the home." Father agreed to clean the motel room by the next day.

On July 17, 2018, the Department again visited the motel room to verify compliance. They found father waking up from a nap, and mother asleep. Mother admitted that she was "just coming off a high from heroin" and that she "needed help with her addiction." Father, however, denied any substance use, and both parents denied any history of domestic violence. The Department observed that the motel room had been cleaned, but the children, who were in the

adjoining room, were dirty and wore dirty clothing.[4]  Some of the children had cuts on their

bodies, and a bug had crystalized in one of the children's ears.  The oldest child, then five years

old, reported that he was "often left alone in the home to care for his younger siblings."  At the

Department's request, the parents completed a drug screening the following day, and both tested

positive for amphetamine and methamphetamine.  Father also tested positive for cocaine.  The

Department subsequently placed the children into foster care and made a Level 1 finding of

physical neglect, inadequate supervision, and inadequate shelter.

After the children entered foster care, the Department required that father meet certain

goals before reunification.  These goals included completing a parenting capacity evaluation,

participating in supervised visitation, maintaining stable employment and housing, attending

parenting classes, domestic violence treatment, and substance abuse counseling.  Although the

Department provided father with referrals for these services, he did not consistently participate in

the services.  In addition, Dr. Cathy Tirrell, a clinical psychologist, conducted a parenting

capacity evaluation and recommended that father participate in individual therapy, couples

counseling, and an anger management program.  Dr. Tirrell determined that "[u]nless [the

parents] truly embrace potential sources of support and therapeutic assistance . . . they are likely

to propagate self-defeating and toxic interpersonal patterns that keep them in a chronic state of

crisis."

The Department did not initially have any "major concerns" regarding father's visitation

with the children.  Father's visitation, however, "became inconsistent," and he would sometimes

arrive late by thirty minutes or more.  In addition, the children's foster parents reported that the

children would demonstrate behavior issues, such as defiance and nervousness, after visiting

---

[4] The motel room consisted of two "rooms that [had been] turned into a make-shift apartment" by combining their entrances to allow passage to either room.

father and mother. Furthermore, at the end of one visit, father and mother got into a "physical altercation" in the middle of a street. The Department ultimately discontinued father's visitation with two of the children at the request of their therapist, who determined that visitation would not be beneficial for those children until father accepted "responsibility for the founded abuse and neglect" and "acknowledge[d] his role in a therapeutic manner." Father wrote the two children a letter apologizing for the domestic violence that they had witnessed because, according to him, "[he] was told that's what [he] needed to . . . admit." Although visitation with these two children never resumed, father continued to have supervised phone contact with the other two children.[5]

Father failed to complete the fatherhood training program, completing only two out of four sessions. Similarly, father enrolled in individual therapy, couples counseling, and domestic abuse treatment programs, all of which ended after father missed three appointments. When asked about the domestic violence with mother, father reported to Dr. Tirrell that "[t]he last time we put our hands on each other was about four months ago." Father later testified that mother had "placed her hands on" him and that he "retaliated" and did the same to her, which he identified as the only "physical confrontation" that had ever happened between them. According to one of the children's foster parents, one child drew a picture of mother "dead on the ground" and father "standing up on the balcony," which the child claimed to have seen at the motel.

Father participated in treatment for anger management and substance abuse, but these services were discontinued after father was incarcerated on October 21, 2020. According to the Department, father was "very adamant" that he did not need these services and felt that mother was the one who needed treatment, not him. Father denied having a substance abuse problem and reported to Dr. Tirrell that he found the sessions "more helpful to him with respect to

---

[5] The Department suspended in-person visitation because of the COVID-19 pandemic.

managing [mother's] addiction issues and anger control problems." Despite father's denials, he tested positive for amphetamine and methamphetamine on four separate occasions between December 6, 2018, and November 13, 2019. Father offered multiple explanations for his positive test results, including that he had touched the drugs without using them, was a "CI for a detective," and had tried drugs at one point in an attempt to understand his wife's addiction. On September 20, 2019, father had a Certo packet, a product reportedly well known for masking drug use, in his pocket before he completed his drug screening. Father denied ingesting the contents of the packet.

Although father had worked at the motel where his family had lived for fifteen years, in May 2019, he was terminated from his position due to an injury he reportedly sustained on the property. Father subsequently worked a "flagging job" but was fired due to tardiness. Father later obtained a job with Perdue but lost that job on July 23, 2020, after he was incarcerated. Father then worked as a machine operator for Tyson but was no longer employed as of January 2021. Father claimed he was paid twenty dollars per hour at Tysons and worked forty hours per week, but later admitted that his hours and pay varied. Father claimed that he left Tyson on good behavior after sustaining an injury in a motorcycle accident. Moreover, at the time of the circuit court hearing, father had been incarcerated and unemployed since March 2021.

Father lived with his family for free at the motel where he worked until he was terminated in May 2019. He then moved to the Eastern Shore where the Department determined father's housing was unsuitable for children. In April 2020, the parents moved to Accomack County where their home was ultimately condemned.

On October 15, 2020, the Department filed petitions in the Juvenile and Domestic Relations District Court of the City of Norfolk (the "JDR court") to terminate father's residual parental rights and to change the foster care goal to adoption with respect to all four children.

On January 29, 2021, the JDR court terminated father's parental rights under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. Father appealed the termination and permanency planning orders to the circuit court.[6]

At the circuit court trial, the Department attempted to present evidence about the termination of father's employment with Perdue. Father objected to the line of questioning on the basis that the reason he lost his job was not relevant. The circuit court overruled the objection stating "[w]hat if it had to do with substance abuse or something of that nature, or anger management issues?" The social worker then testified that father reportedly was "on medical leave," but mother later stated that father "was terminated from that job."

Father, who was incarcerated at the time of the circuit court trial, testified that, if released, he would return to work at Tyson or Perdue. Father additionally testified that he would live with his father-in-law in a three-bedroom home which had furniture and beds for the children. Father testified that mother was "with her dad."

The circuit court found that it was in the children's best interest to terminate father's parental rights under Code § 16.1-283(B) and (C)(2) and approve the foster care goal of adoption. These appeals followed.

## II. ANALYSIS

On appeal, father contends that the circuit court erred by overruling his objection to the relevancy of his termination from employment with Perdue which ended in July 2020 and by terminating his parental rights under Code § 16.1-283(B) and (C)(2). As detailed below, we find no error and affirm the decisions of the circuit court.

---

[6] The JDR court also terminated mother's parental rights with respect to all four children, which she appealed, but the circuit court ruled that her appeal was withdrawn under Code § 16.1-106.1(D) after she failed to appear for trial.

*A. Relevancy*

Father claims that the circuit court erred by overruling his objection to the relevancy of his separation from employment with Perdue which ended in July 2020. Father has the burden of showing that reversible error was committed in the matter from which he appealed. *See Alwan v. Alwan*, 70 Va. App. 599, 612 (2019). Father failed to comply with Rule 5A:20(e), which requires that an appellant's opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Father failed to provide any legal authority in support of his assignment of error. "[I]t is not the function of this Court to 'search the record for error in order to interpret the appellant's contention and correct deficiencies in a brief.'" *Alwan*, 70 Va. App. at 612 (quoting *West v. West*, 59 Va. App. 225, 235 (2011)).

Despite being afforded an opportunity to correct the deficiencies, father's brief does not comply with the Rules. We find that father's failure to comply with Rule 5A:20(e) is significant, so we will not consider his arguments regarding his first assignment of error.[7] *See Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); *Parks v. Parks*, 52 Va. App. 663, 664 (2008).

---

[7] Even if we were to consider this assignment of error, his argument necessarily fails. An important fact for the trial court to consider under Code § 16.1-283(B) and (C)(2) is whether it is reasonably likely that the conditions which resulted in the neglect or abuse can be substantially corrected, or whether the parent has been unwilling or unable to substantially remedy the circumstances which cause the parent's child to be placed in foster care. Father's employment is relevant as to whether father could remedy his inadequate housing situation. *See Clay v. Commonwealth*, 262 Va. 253, 257 (2001) ("Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue.").

## B. Termination of Parental Rights

Father argues that the circuit court erred by terminating his parental rights under Code § 16.1-283(B) and (C)(2). "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). The "reasonable and appropriate efforts" contemplated by Code § 16.1-283(C)(2) "can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338 (1992)).

Father argues that the circuit court erred in terminating his parental rights under Code § 16.1-283(C)(2) because he "had made substantial efforts to remedy the conditions which placed the child in foster care, by obtaining employment, housing and receiving some treatment and therapy." The record, however, reflects that father failed to complete parenting classes, domestic violence treatment, substance abuse treatment, individual therapy, and couples counseling during the three years following the children's placement in foster care. Although father testified that he could live at his father-in-law's house and go back to work for Perdue or Tyson, he had been unemployed and incarcerated since March 2021, and the record does not indicate his expected release date. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

In terminating father's parental rights under Code § 16.1-283(C)(2), the circuit court determined that over the course of three years, father had failed to remedy the conditions that led to the children's placement and continuation in foster care. Considering the totality of the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and not addressing termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2);

therefore, we do not reach the question of whether the circuit court erred in alternatively

terminating father's parental rights under Code § 16.1-283(B).

III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court.

<em>Affirmed</em>.